# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| **FREESCALE SEMICONDUCTOR, INC.** | § | |
| | § | **Case No.   4:06cv491** |
| vs. | § | **(Judge Schell)** |
| | § | |
| **PROMOS TECHNOLOGIES** | § | |

## ORDER

Before the Court is Freescale Semiconductor, Inc.'s Motion to Compel Discovery (Dkt. No. 68).  The Court has reviewed the Motion and replies.  The Court believes a few matters are best reserved for a hearing but that most matters may be disposed of without the necessity of a hearing.

The Court notes that Freescale's Motion is no model of clarity in the relief it seeks.  Motions that are overly broad and general should receive the like consideration.  Freescale's Motion is so general that the Court is left to guess on what matters are in dispute between the parties.  Reading between the lines and in an effort to end the incessant squabbling, the Court enters the following order.

The accused instrumentalities DDR2, SDRAM, Mobile SDRAM, DDR, SDRAM and DDR2SDRAM - Freescale states that the GDS electronic data files have not been produced for the products.  ProMOS responds that all GDS files have been produced by UMI.  The only GDS file not produced is that of Hynix.  Hynix is a third party and has not authorized the release of those files.  Freescale served interrogatories on Hynix but apparently did not request this information.  The Court finds that ProMOS has complied with its discovery obligations as to the GDS files.

Freescale also requests documents related to any simulation of the Accused Instrumentalities.

By affidavit Gower has testified that for each product designed by ProMOS, UMI produced the entire database of files, which includes both standard schematics and simulation schematics. Freescale in its reply takes issue with this statement particularly as to Hynix.  For the reasons noted above, ProMOS need not produce as to Hynix.  The Court finds that ProMOS has complied on this issue.  As to the simulation schematics noted on page 6 of its Motion (f.n. 18), the Court finds that the affidavit of Gower demonstrates that P8A/V8B design has been produced.  The Court further finds that the V7F design has been produced. ProMOS contends that it has produced all simulation schematics for V6C which was designed by Infineon.  The Court is satisfied with this compliance.

Left for resolution at the hearing as to schematic designs are the following and no more: P6B, SD9AA, and SD9DA.

Freescale's request that ProMOS produce all technical documents required by Patent Rule 3-4 and document requests 67-73 is patently overbroad and no assistance is provided to the Court as to what in the "patent world " Freescale is referring.  Request denied.

Freescale contends that circuit schematics and data sheets have not been produced for "HUNDREDS OF ACCUSED INSTRUMENTALITIES." Of course none of these instrumentalities are identified, not even by group or category.  The Court declines to speculate on this matter.  This is nothing more than patent hyperbole and the Court won't consider such a broad and illusive request, i.e. be specific or be silent.

As to Process flows, ProMOS raises several issues as to whether discovery is appropriate as to the 12 developmental flows.  However, the Court directs that ProMOS produce relevant flow information as to the following and only the following representing the five highest sales:  P3H, P4I, P4L, P6E, and P6M.  The Court is satisfied that ProMOS has complied as to other process

flows.

As to Process recipes, Freescale states that ProMOS has gone back on its word and refused to produce process recipes for those processes noted in footnote 39 at page 10. ProMOS has produced evidence that it substantially complied prior to the Motion and has since complied with the remaining production. Freescale's request as to these documents is moot.

The Court denies Freescale's request for additional details as to ProMOS's noninfringement contentions. Freescale states that it has produced documents as well as relayed facts in licensing negotiations which demonstrate why there is no infringement. The Court finds that ProMOS has sufficiently identified the process and basis for its claim. Freescale cannot claim surprise by any evidence which supports this position.

The Court finds that Freescale has complied with producing information related to the "design around." Therefore the issue is moot.

Freescale also seeks wafer samples from processes used before ProMOS changed its manufacturing to use a new etch procedure. ProMOS contends that there was no request for production of wafers in the document requests and, in any event, it did not preserve the old wafers and therefore could not pull from the manufacturing process in the three locations sought by Freescale. Freescale argues that ProMOS's actions amount to spoilation. Freescale is free to take that up with the District Judge. However as to the Motion to Compel, ProMOS cannot produce what it no longer has and, in any event, the Court finds that the initial request does not specifically require the production of wafers. Request denied.

Freescale next seeks production of location of use documents. Request for Production 64 seeks "documents concerning the actual or intended usage and /or the actual or intended location

of usage of each Accused Instrumentalities sold, shipped or otherwise transferred to any person on or after December 8, 2000." ProMOS contends this is over broad but agreed to produce some representative documents. Freescale objects. The Court notes that Freescale has identified hundreds of Accused instrumentalities. To produce all correspondence for a six-year period is an absurd waste of resources and time. To resolve this matter, the Court orders that Freescale produce documents for each year noted in the Request for each of its three largest customers limited to three months which will run consecutively starting in December 2000 and that the production of documents are limited to this simple request: all documents which reflect the ultimate location of place of shipment to the United States. If the United States is not mentioned as the place of ultimate or potential site of shipment, then the document need not be produced. For clarity, in that all patent lawyers need clarity, for 2000, documents will be produced for December 2000 and January to February 2001. 2002 production is for March, April and May and so forth until the end of the relevant cutoff period.

Except as to the few matters reserved in this order, the Motion is **DENIED** in most part and **GRANTED** in part as ordered. The parties are expressly prohibited from raising any new issues or rehashing any issues already ruled upon.

**SO ORDERED.**

**SIGNED this 5th day of December, 2007.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE