# United States District Court

EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| **FREESCALE SEMICONDUCTOR, INC.** § | |
| § | Case No.  4:06cv491 |
| vs. § | (Judge Schell) |
| § | |
| **PROMOS TECHNOLOGIES** § | |

## AMENDED ORDER

After having held a hearing in this matter on December 7, 2007, the Court enters this Amended Order relating to Freescale Semiconductor, Inc.'s Motion to Compel Discovery (Dkt. No. 68). This order supercedes and replaces in its entirety the Court's December 5, 2007 order (Dkt. 85).

The Court has reviewed Freescale Semiconductor, Inc.'s Motion to Compel Discovery (Dkt. No. 68) and replies. While the Court believes a few matters needed to be reserved for the hearing, most matters have been disposed of without the necessity of a hearing.

The Court notes that Freescale's Motion is no model of clarity in the relief it seeks. Motions that are overly broad and general should receive the like consideration. Freescale's Motion is so general that the Court is left to guess on what the matters are that are in dispute between the parties. Reading between the lines and in an effort to end the incessant squabbling, the Court enters the following order.

The accused instrumentalities DDR2, SDRAM, Mobile SDRAM, DDR, SDRAM and DDR2SDRAM - Freescale states that the GDS electronic data files have not been produced for the products. ProMOS responds that all GDS files have been produced by UMI. The only GDS file not produced is that of Hynix. Hynix is a third party and has not authorized the release of those files.

1

Freescale served interrogatories on Hynix but apparently did not request this information. The Court finds that ProMOS has complied with its discovery obligations as to the GDS files.

Freescale also requests documents related to any simulation of the Accused Instrumentalities. By affidavit, Gower has testified that for each product designed by ProMOS, UMI produced the entire database of files, which includes both standard schematics and simulation schematics. Freescale in its reply takes issue with this statement, particularly as to Hynix. For the reasons noted above, ProMOS need not produce as to Hynix. The Court finds that ProMOS has complied on this issue. As to the simulation schematics noted on page 6 of its Motion (fn. 18), the Court finds that the affidavit of Gower demonstrates that P8A/V8B design has been produced. The Court further finds that the V7F design has been produced. ProMOS contends that it has produced all simulation schematics for V6C which was designed by Infineon. The Court is satisfied with this compliance.

At the December 7, 2007 hearing, the Court was informed that counsel for ProMOS has represented that the schematic designs as to P6B, SD9AA, and SD9DA either have been produced or do not exist. Therefore, no further ruling is required from the Court on this issue.

Freescale's request that ProMOS produce all technical documents required by Patent Rule 3-4 and document requests 67-73 is patently overbroad and no assistance is provided to the Court as to what in the "patent world " Freescale is referring. Request denied.

Freescale contends that circuit schematics and data sheets have not been produced for "HUNDREDS OF ACCUSED INSTRUMENTALITIES." Of course, none of these instrumentalities are identified, not even by group or category. The Court declines to speculate on this matter. This is nothing more than patent hyperbole and the Court won't consider such a broad and illusive request, *i.e.* be specific or be silent.

As to Process Flows, ProMOS raises several issues as to whether discovery is appropriate as to the 12 developmental flows. However, the Court directs that ProMOS produce relevant flow information as to the following and only the following representing the five highest sales: P3H, P4I, P4L, P6E, and P6M. The Court is satisfied that ProMOS has complied as to other process flows.

As to Process Recipes, Freescale states that ProMOS has gone back on its word and refused to produce process recipes for those processes noted in footnote 39 at page 10. ProMOS has produced evidence that it substantially complied prior to the Motion and has since complied with the remaining production. Freescale's request as to these documents is moot.

The Court denies Freescale's request for additional details as to ProMOS's noninfringement contentions. ProMOS states that it has produced documents as well as relayed facts in licensing negotiations which demonstrate why there is no infringement. The Court finds that ProMOS has sufficiently identified the process and basis for its claim. Freescale cannot claim surprise by any evidence which supports this position.

The Court finds that ProMOS has complied with producing information related to the "design around." Therefore, the issue is moot.

Freescale also seeks wafer samples from processes used before ProMOS changed its manufacturing to use a new etch procedure. ProMOS contends that there was no request for production of wafers in the document requests and, in any event, it did not preserve the old wafers and therefore could not pull from the manufacturing process in the three locations sought by Freescale. Freescale argues that ProMOS's actions amount to spoilation. Freescale is free to take that up with the District Judge.

However, after hearing argument at the December 7, 2007 hearing, the Court orders ProMOS to produce all non-privileged documents relating to the testing performed by ProMOS with respect to wafer samples created prior to the change of design in post-metal etching process, including those documents which have been furnished to ProMOS's experts. As to any other potential documents relating to wafers sought by the Motion to Compel, ProMOS cannot produce what it no longer has and, in any event, the Court finds that the initial request does not specifically require the production of wafers. Request denied.

Freescale next seeks production of location of use documents. Request for Production 64 seeks "documents concerning the actual or intended usage and /or the actual or intended location of usage of each Accused Instrumentalities sold, shipped or otherwise transferred to any person on or after December 8, 2000." ProMOS contends this is over broad but agreed to produce some representative documents. Freescale objects. The Court notes that Freescale has identified hundreds of Accused instrumentalities. To produce all correspondence for a six-year period is an absurd waste of resources and time. To resolve this matter, the Court orders that ProMOS produce documents for each year noted in the Request for each of its three largest customers limited to three months which will run consecutively, starting in December 2000, and that the production of documents are limited to this simple request: all documents which reflect the ultimate location of place of shipment to the United States. If the United States is not mentioned as the place of ultimate or potential site of shipment, then the document need not be produced. For clarity, in that all patent lawyers need clarity, for 2000, documents will be produced for December 2000 and January to February 2001. 2002 production is for March, April and May and so forth until the end of the relevant cutoff period.

Pursuant to the parties' representations at the hearing, ProMOS shall produce all responsive materials within 20 days of the date of this order.

Therefore, the Motion is **DENIED** in most part and **GRANTED** in part as ordered. The parties are expressly prohibited from raising any new issues or rehashing any issues already ruled upon.

**SO ORDERED.**

**SIGNED this 12th day of December, 2007.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE